Number 21-1727, Zurich American Insurance Company versus UIP Companies LLC et al, a balance. Mr. Klein for the a balance. Mr. Margulies for the appellate. Morning, counsel. Mr. Klein, please proceed when you're ready. Thank you, your honor. Good morning, and may it please the court. I'm David Klein for the UIP Parties. This is a case about DNO Insurance. And on summary judgment, the district court accepted two of Zurich's defenses to coverage, we think incorrectly. First, it held that UIP should have been given notice under an earlier 2017 policy, because it received an email that it should have recognized as a claim within the meaning of the policy. And I'll explain in a minute why this judgment was incorrect as a matter of law. Alternatively, the district court held that if the claim was made during the period of the later 2018 policy under which UIP is seeking coverage, then the UIP's notice failed the notice condition because it wasn't given as soon as practicable. And this requires application of a reasonableness standard that in our view was inappropriate for summary judgment. So let me begin, if I may, by first addressing what happened before the inception of the later policy. In February, 2018, Mrs. Koster, who later became a plaintiff against UIP, was seeking to negotiate a buyout of her stake in the company. And her personal counsel sent an email to UIP's outside counsel, proposing alternative terms for the transaction. Now the district court's core error was in concluding that this email was a claim within the meaning of the policy and the policy defines a claim as a demand for monetary or non-monetary relief. Now in its briefing on summary judgment, UIP explained that one of the alternatives that Mrs. Koster's counsel had proposed included payments of amounts that she claimed to be due and owing to her. And the district court cited UIP's lawyer's characterization as describing, and I quote, on its face, a demand for monetary damages. And that would have been a claim within the policy. But it wasn't a demand for damages at all. It was a proposal to value sums that Mrs. Koster claimed UIP owed her. And an insurance doesn't cover as a loss, an asset that you're not entitled to retain in the first place. I can't, for example, take my neighbor's car and then claim insurance for a loss when she takes it back. And I can't withhold money that I owe her and claim insurance when I pay my debt. And because Mrs. Koster's February proposal triggered no insurance coverage, it triggered no obligation to give notice of a claim within the meaning of that earlier 2017 policy. So the very basis that the district court cited for its ruling was the precise reason that the ruling was incorrect. Now, I'd like to turn to Zurich's, what I consider Zurich's fallback. It doesn't have to be a successful claim in order to suffice to give notice of a claim, right? No, that's absolutely true, but it does have to constitute a claim. It has to be a request for monetary relief within the coverage of the policy. And a claim for restitution wouldn't be such a claim. This court in Crocker described what restitution is and what it is, is a claim for unjust enrichment. I'm holding something that's of value to me that I'm withholding from some plaintiff. That's different from say, claims for fiduciary relief, breaches of fiduciary duty, such as later emerged in this case. In February, 2018, there wasn't the hint of a request or an assertion that there was a violation of fiduciary duties. That came later when Mrs. Koster filed her underlying lawsuits. So now let me turn to Zurich's fallback argument that notice wasn't given as soon as practicable after the lawsuits were filed under the 2018 policy. And your honor's context is important here. When in the winter of 2019, UIP first submitted Mrs. Koster's complaints in the underlying matters to Zurich, Zurich initially undertook to defend UIP. Zurich knew the dates the lawsuits were filed because UIP had provided the complaints to Zurich, but Zurich didn't deny coverage. It didn't assert that notice was late. It didn't argue that notice had not been given as soon as practicable. Instead, it undertook to defend UIP. It was a few months later in June, 2019 that Zurich decided to deny the claim because of the 2018 email, which it had since received from UIP. And it was only then that Zurich added, in our view as a fallback position, that UIP's claim hadn't been made as soon as practicable under the 2018 policy. Now, I don't question Zurich's good faith in changing its mind about coverage when it learned of the February, 2018 email. It's certainly entitled to make that judgment. We disagree with it for the reasons that I've just described but Zurich's conduct in initially accepting the claim is inconsistent with the belief that UIP's notice was unquestionably late. By March of 2018, it had, excuse me, March of 2019, it had all the information it needed to make that judgment. And it didn't conclude at that time that UIP's notice was late. So rather, it was a fallback argument that Zurich embraced only when it changed its mind and decided to deny the claim. And if Zurich itself didn't initially conclude that notice was out of time, then UIP as a policy holder certainly shouldn't be held to a less forgiving standard. Did they ever say initially that they accepted responsibility under the insurance policy or did they merely receive something? And then upon looking at it realized in their view, it was not time. So they initially affirmatively undertook to defend my client under a reservation of rights. They certainly had the right to deny coverage later. All right. Right. But at the time that they received the initial notice and they had the complaints in front of them, what they agreed to do was defend the claim. They also asked for more information, which UIP provided. The information that UIP provided included that February 2000- They said as a matter of an enforceable statement that they would defend the claim initially is your argument? Well, I'm not sure that I would call it enforceable because they had reserved their rights to deny coverage later. But I'm not arguing that there was a waiver of their rights to do that here. I'm arguing that their conduct based on the information that they already had at their disposal, the complaints and the dates they were filed is inconsistent with their position now that the- But like I say, there's another way to look at it. You said context matters. It may be that after you review what you've got, you realize the delay in time puts us in an untenable position and there were an awful lot of attorney fees being paid during that period. And there were things going on and they may have said, you should have brought this to us when you first got it. That's certainly an argument that was available to them again in March of 2019. They, if you look at the record and I don't have a case site off hand, but in the joint appendix, there is a lengthy sort of a record that Zurich seems to have maintained itself about the nature of its communications with UIP. And they indicated that they received the notice March of 2019, I think it was March 8th. And although it had actually been emailed in February initially, and they indicate that there may be an issue of timeliness. And their view was that they weren't going to pay for pretender costs, i.e. the defense costs that had already been incurred, if any, they weren't gonna pay for. And there were some for sure. And UIP didn't take issue with that. That was already water under the bridge in March of 2019. Subsequently, they received the February 2018 email, which long predated the lawsuit or the lawsuits and the underlying cases. And they said, oh, this looks like to us like you already have had a claim. Again, we disagree with that, but really it was only at that point that they decided, in fact, certainly it was only at that point that they decided to deny coverage. And it was only at that point in their denial letter that they added that we think notice was not as soon as practicable. So that was a fallback argument, Your Honor. And- There's nothing wrong with a fallback argument if it's a winning argument, obviously. I agree with that. But again, I turn to their conduct. Their conduct is inconsistent. I could see how if prejudice were a relevant component of the inquiry, then you could say that the conduct is incommensurate with assumption that they were prejudiced by this because they were acting as if they had notice anyway. Well, I- If we don't think prejudice is a part of the inquiry, then what does it matter? It's either that notice was given as soon as reasonable, as soon as reasonably practicable, as soon as practicable, or it wasn't. And notice for those purposes wasn't given until seven to nine months after the claim, after the- Right. Right, and frankly, that's not unusual in the context of a policy like this, which is claims made. You know, we cited cases, but even in the occurrence-based cases in D.C., for example, Starks, which is cited by both sides extensively, it was a case where there was a 13-month delay in notice. And that was found not unreasonable as a matter of law. So this is really not a question of, you know, a math equation. Is it more or less than another case? I'm not saying that- What was impracticable about giving notice when the suits were filed? Frankly, my client was not well-informed, and they've testified to that. They did not appreciate the nature of the coverage. And at the moment that they did, practically within a day, they gave notice. So, you know, that we would cite as a mitigating circumstance. But again, as soon as practicable is a very forgiving standard in D.C. You're right that there is no prejudice rule under D.C. law, but this really goes to the question about whether notice was timely under that forgiving as soon as practicable standard. If you look at a case, for example, like Washington Sports, where the policy was structured very similarly to the policy we have here, and it was a Judge Hogan case, you know, that policy said notice had to be given within 60 days, and it must also be immediate. So structurally, it was very similar to this one, but it was a much less forgiving standard. As soon as practicable is one of reasonableness. And he held that notice that was given on the 60th day satisfied the test. He said that he needed to read the word immediate within the context of the deadline that was set by the claims made policy. And that's the same type of analysis that we think would be appropriate here. And we certainly think that our client, I see that I've long since run out of time. May I just finish, Your Honor? Thank you. Thank you very much. We certainly think that our clients can't be charged with having been unreasonable in their compliance with the policy terms. When Judge Hogan found under a similar type of provision that notice was reasonable when it was given on the last day of the policy under an immediacy standard. Suppose the facts in this case were that your client knew of the policy, knew of the policy coverage, just didn't give around to giving notice until the same time that was done here. Well, I think that would be a different case. Why? Because it's contrary to what they testified. They knew the policy existed, but they had- No, no, no, no, no, no, no, no, no. Stay with my hypothetical. Don't go any further. My hypothetical is they knew they had a policy and they don't deny it, and they didn't get around to giving any kind of notice until the same time they gave on the facts of this case. Does that change your analysis? Well, I want to make sure- Unreasonable on this standard? Judge Edwards, I want to make sure I understand your question. They knew of the policy. They knew the policy existed. They knew there was coverage. They knew there was coverage. They knew all the things you were arguing, but they knew. They didn't get around to doing it until the same time they did here. Is it a different result? Well, I think the mitigating factor that I described would be removed, so it might be a different result, but that depends on how much weight the court puts on the mitigating factor. You're saying you should be able to plead. They didn't really know, and that excuses them, because otherwise it's unreasonable. That's your argument. They didn't really know here. They didn't understand what they had, and so that could be two years later they gave notice. Well, and they honestly didn't know, and they would win on that if it went to a jury and there was a factual issue, they would win on that. So you're saying the critical consideration here is they just didn't know, and so that's why they were delayed. The critical consideration, that circumstance would not apply, Judge Edwards, because under those circumstances, the notice would have come after the policy had expired. Okay, well, don't take it beyond the policy. I'm trying to get you... Absolutely. Under no circumstances can you... Okay, so stay within the policy, but they're just the same amount of time, and their answer is, yeah, we knew, we just didn't get around to it. All right, if you stay within the policy, then again, it may well be that they would be entitled to coverage even then, because they were within the policy, and the policy provides a strict deadline, but to the extent that the court... Go ahead, we'll finish, and then I have one follow-up. Okay, but to the extent... Thank you, Your Honor. To the extent that the court feels differently than I would still say, you should consider as a mitigating factor their plea of ignorance, which is uncontroverted on the record. I mean, the first thing you said made it sound like as long as it's within the policy, it's okay, but that's just not what the policy says. The policy says as soon as practicable, but in any event, no later than 90 days, and there's a different requirement. It has to be as soon as practicable, regardless of the 90 days. Right, but there's a lot of case law under the bridge on what as soon as practicable means, and it's a very forgiving standard. Again, as soon as practicable commonly means, a longer period than this policy even covered. I read that in the context of a claims-made policy with a hard deadline as an exhortation to give it as soon as practicable, as soon as reasonable in all the circumstances. And again, that's the way Judge Hogan read a similar provision in Washington Sports. Mr. Klein, can you cite any case in which ignorance about a contract's term affects the reasonableness of some action within that contract? I mean, that doesn't seem to be consistent with ordinary contract principles in the District of Columbia. Yeah, I believe in our briefs, we actually cited a case like that, and I'll confess that I have, there was a District of Columbia Court of Appeals case, and it in turn cited a Southern District of New York case, and I just don't have it at my disposal, but I'll try to- Look for it and try to get it on rebuttal if you'd like. I beg your pardon? You can look for it and try to give us a citation on rebuttal. I will, Your Honor, thank you. Let me make sure my colleagues don't have additional questions for you this time. Thank you, Mr. Klein. We'll hear from Mr. Margolis now. Thank you. Thank you, Your Honor. May it please the court, Andrew Margolis for Zurich American Insurance Company. And I'd like to start with the last argument, and while Mr. Klein was calling it a fallback argument, we don't view it as a fallback argument. We view it as a secondary argument that shouldn't even be reached because you only reach the timing of the notice of the lawsuits if we first find that the February 2018 email was not a claim. So if the lawsuits were the first claim, a fallback argument and a secondary argument that doesn't need to be reached, isn't that a fallback argument? It could be, it could be, but we do view it as, we do view that as two very separate issues. And getting to this issue, as Your Honor pointed out, it is as soon as practicable, that is the standard, and in no event later. So it is not either or, it is not you get to choose what you wanna do either as soon as practicable or later or 90 days after the policy period. It is still as soon as practicable, and the 90 days only puts an end limit. And the Washington sports case that Mr. Klein cited was very different. That policy said immediately, but no later than 60 days. That 60 days was measured from when the claim was made, not at the end of the policy period. Here, using Mr. Klein's argument, taking it out to the extreme, if an insured was sued on the first day of the policy period, under Mr. Klein's argument, he could wait 15 months, the 12 months of the policy period, plus 90 days before giving notice and argue, well, we beat the 90 days after the policy period, so we're fine. That still does not meet the as soon as practicable test. And an insured cannot argue that they were ignorant of the terms of their policy and understand that they had coverage as an excuse. That would turn notice provision on its head in every insurance policy, every insured could just come in and say, well, I really didn't understand I had coverage, so therefore I was excused from giving notice timely. These are sophisticated business people who have sophisticated employees and who have insurance brokers, and they should understand the policy. They bought a policy, they were sophisticated enough to buy a policy to cover risks. They are charged with the knowledge of that policy. We do not believe that giving notice nine months after lawsuits is as soon as practicable. And the other argument Mr. Klein made in terms of Zurich accepting coverage and agreeing to defend, as Judge Edgars pointed out, Zurich did not accept coverage. They reserved their rights. And what happened here is, as your honors I'm sure understand, the one thing that insurance companies hate more than anything else is a surprise. And Zurich was given notice of three lawsuits in March of 2019, three weeks before trial was scheduled. And Zurich was scrambling, trying to figure out what was going on in the claim, getting additional information. They immediately requested additional information from UIP, got some correspondence that dated back to 2017. And there was a reference in one of the emails that suggested there was a settlement demand. And Zurich then asked for a copy of that settlement demand. And it wasn't until May of 2019 that Zurich was first given a copy of the February 2018 settlement demand. And within several weeks, Zurich came to the conclusion that that was a claim in the prior policy period and should have been reported and was not. So Zurich was being very diligent in, on the one hand, trying to get up to speed on the claim and there was a trial coming up and trying to get information about that to see what kind of exposure they may have for the claim. And at the same time, evaluating coverage because of everything that happened. So they were acting diligently. They at all time reserved their rights. And as soon as they had the necessary information, they took the coverage position that there was no coverage. And going back to the February 15th email, the 15th, 2018 email, the fallacy of UIP's argument is that it was just a communication between parties and a buyout of shares. And that is not what the email says. The email very clearly states, and again, this is going back. This is an email that came after two years of disputes between these parties of letters back and forth, claiming money was owed, claiming improper conduct. And finally, this email came that is labeled inadmissible settlement communication. And the email states, at page joint appendix 385, Mrs. Koster is willing to enter a global resolution of claims for past conduct and to relinquish her equity interest. This was more than just a purchase of an equity interest. This is to settle claims. And she went on to make demands for money. Those included percentages of past profits she wasn't paid and a $300,000 payment for loss of the profits and dividends and for not being permitted to be involved in management of the companies. And those were her damages. And Mr. Klein can argue restitution, but the cases that he cites and all the cases that talk about restitution are very different cases. You have the level three case, for example, which was a stock rescission case. And the insureds there obtained money for stock sales based on allegedly fraudulent representations. And when it was found that they had committed fraud, they were ordered to repay the purchase price of the stock. That's restitution. This is not restitution. This is a party claiming they had certain rights. They were entitled to certain payments, certain distributions. They were entitled to be involved in managing the company and they weren't permitted to do that. And she was damaged. And that was exactly what this email was. A demand for damages. If UIP had been required to pay Mrs. Costa these amounts, they would have been damaged. And these are the amounts that Mrs. Costa ultimately sued for in her lawsuits. These were the damages she was claiming. So clearly these are the monetary amounts she was seeking from UIP. And this is the very reason why policies like this have a definition of claim that is more than one prong because it is understood that before a lawsuit is filed, there are often written demands. And sometimes they never go to lawsuits that these things get resolved based on the written demands. But that's a claim. And Zurich is certainly free to choose how to define a claim. And it did so here. And a claim is a written demand. And this is a written demand. And it is not for restitution. So there is no doubt that this was a claim as defined in the policy and that they were obligated to give notice within 90 days after the end of the policy period, which would have been May, 2018. And it wasn't until March of 2019, they gave notice. Now, again, turning back to the lawsuits, even if this document was not a claim and the lawsuits were the first claim, it is still not practicable to give notice when you get lawsuits in June and August of 2018 to give notice in March. They certainly could have given notice sooner. And the only excuse they have, as Judge Edwards pointed out, is that they just weren't aware of their coverage. That may be true or it may not be true, but the insured subjective belief cannot override what the contract says. It is an objectively reasonable standard that has to govern these situations. Otherwise, as I said, every insured could come in and say, I didn't understand my coverage. I didn't understand this is something the insurance company would have wanted. So I'm excused from my obligations under the policy. And that would create a situation of uncertainty and no insurance policy could ever be enforced in those situations. And that's why it has to be an objective standard. So these policies can be enforced as they are written. And if your honors have no further questions, we will rest on our submission. Thank you, counsel. Thank you, your honor. Mr. Klein, we'll give you two minutes for rebuttal. Sorry, it took me a moment to unmute there. So first of all, I want to give the court the citations that I referenced. One of them is Starks, which is a case we've cited over and over again. 408A second at 982 to 83 and note six. It specifically cites lack of knowledge or lack of appreciation of the coverage as a mitigating standard. This court also in American Institute of Architects, a case that we cited said the same thing, 986F second 1455. So Mr. Margulis is incorrect in arguing that the insured cannot argue ignorance. The insured can argue ignorance as relieving him of all obligations, but he can certainly argue ignorance as a mitigating consideration because that's what this court and the DC Court of Appeals have said in interpreting DC law. Mr. Margulis referred to, described, described what happened between March of 2019 and June of 2019 when Zurich changed its position regarding coverage. I'm not arguing that they had waived their rights or they had failed to reserve their rights to deny coverage later. But the fact of the matter is that Zurich understood in March how long it had been since the complaints were filed. And it didn't decide then and there that the complaints were unreasonably late. It may have thought that that was possible and there's evidence that it did think it was possible, but it was only after it received the information about the February, 2018 email, which we believe it misinterpreted that it decided to deny coverage. And it was only at that time that it changed its position. Ultimately, the test is what the insured could reasonably have believed were its obligations under the policy. And again, under a policy that has these dual tests of time, we would take the position that the insured could reasonably have believed as Judge Hogan did in Washington sports, if the court has no further questions. Thank you, counsel. Thank you to both counsel. We'll take it under submission.
judges: Srinivasan, Rao, Edwards